UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

VALENTINA TIMARAN RESTREPO,    )
                                                                     )
          Petitioner,                              )
                                                                     )
v.                                                           )    Case No. CIV-26-661-G
                                                                     )
WARDEN, Diamondback                        )
Correctional Facility, et al.,                )
                                                                     )
          Respondents.                          )

## ORDER

Petitioner Valentina Timaran Restrepo, appearing pro se, filed a Petition for Writ of Habeas Corpus ("Petition," Doc. No. 1) pursuant to 28 U.S.C. § 2241, challenging her detention by U.S. Immigration and Customs Enforcement.[1]  Petitioner is in custody at the Diamondback Correctional Facility in Watonga, Oklahoma.  *Id.* at 3.

Now before the Court is Petitioner's Amended Emergency Application for Temporary Restraining Order (Doc. No. 4).

In her Amended Emergency Application, Petitioner describes that she underwent "multiple invasive surgical procedures" on November 6, 2025.  *Id.* at 3; Pet'r's Decl. (Doc. No. 2) ¶ 7; *see also* Pet. Ex. 1 (Doc. No. 1-1) at 9-12.  The "surgeries require strict and continuous post-operative monitoring to prevent severe complications."  *Id.*; Pet'r's Decl. ¶ 8.

---

[1] Petitioner identifies the respondents as the Warden of the Diamondback Correctional Facility; the Field Office Director of the Immigration and Customs Enforcement ("ICE") Dallas Field Office; Todd M. Lyons, Acting Director, U.S. ICE; Kristi Noem, Secretary of Homeland Security; and Pamela Jo Bondi, U.S. Attorney General.  Pet. at 1.

On February 4, 2026, Petitioner was "taken into ICE custody while attending one of her regularly scheduled check-in appointments." *Id.* She has remained in detention since then. *Id.*

"Approximately two to three weeks ago," Petitioner "developed an abnormal and painful mass in her abdominal area" at "the precise location of her prior surgeries." *Id.*; Pet'r's Decl. ¶ 9. Since that time, the mass has been "progressively and visibly growing." *Id.* (emphasis omitted); Pet'r's Decl. ¶ 10. Petitioner is in "8 out of 10" "severe and constant pain" that "worsen[s] daily." *Id.*; Pet'r's Decl. ¶ 11.

According to Petitioner, she has been "taken to the emergency medical unit" at the detention facility "on a near-daily basis." *Id.* (emphasis omitted); Pet'r's Decl. ¶ 13.

On March 27, 2026, "medical staff at the facility ordered an 'urgent' ultrasound to diagnose the mass." *Id.* (emphasis omitted). But the ultrasound "requires an 'external approval' that had not been obtained." *Id.* Because of this, Petitioner was informed that it "may take up to one month to receive further medical response or treatment." Pet'r's Decl. ¶ 17. Petitioner had not received the ultrasound at the time the Application was filed. Pet'r's Am. Em. Appl. at 3.

Petitioner seeks emergency injunctive relief because she argues that waiting one month "is medically untenable" and she believes she is at risk of "life-altering damage." *Id.* at 4.

I.      *Standards of Review*

As explained by the Tenth Circuit,

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001) (citation omitted). These four requirements apply equally to a request for a temporary restraining order (or "TRO"). *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002); *United States v. Terry*, No. CIV-19-250-SLP, 2019 WL 7753271, at *1 (W.D. Okla. Mar. 26, 2019).

Petitioner's request for a TRO is also governed by Rule 65 of the Federal Rules of Civil Procedure. Rule 65(b)(1) prescribes that the Court may enter a temporary restraining order without notice to the adverse party or its attorney only if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A), (B).[2]

---

[2] Petitioner has sufficiently complied with Rule 65(b)(1)(B)'s requirement to describe why notice "should not be required." *See* Pet'r's Am. Em. Appl. at 8.

3

II.    *Discussion*

   a.  *Likelihood of success on the merits*

"Federal immigration detention is a form of civil (not criminal) detention that must comply with the Fifth Amendment's Due Process Clause." *Essien v. Barr*, 457 F. Supp. 3d 1008, 1014 (D. Colo. 2020) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  Due to its civil nature, this detention must be "nonpunitive in purpose and effect." *Id.*

Petitioner argues that Respondents' awareness of the urgency of her medical condition and their failure to ensure the ultrasound is administered "urgent[ly]" as required effectively turn her "regulatory detention into unconstitutional punishment." *See* Pet'r's Am. Em. Appl. at 6.

Based on the record before the Court, Petitioner, at this stage, has shown that she is likely to succeed on the merits of showing that her detention is in violation of the Fifth Amendment.

   b.  *Irreparable Injury to Petitioner*

Petitioner describes that the recently appearing abdominal mass at the location of her prior surgeries is "increasing in size" and accompanied by "pressure, swelling, hardening of the abdominal area, and significant discomfort with movement and sitting." Pet'r's Decl. ¶¶ 10, 12.  Petitioner also describes significant and worsening pain. *Id.* ¶ 11.

Based on the present record, the need for an "urgent" ultrasound to "evaluate the mass" and diagnose Petitioner's condition has been determined by facility staff to be necessary but delayed by the need for external approval. *See id.* ¶ 14.

Based on these descriptions, Petitioner has "demonstrate[d] that irreparable injury

is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 22 (2008)).

### c. Balance of the Equities, and the Public Interest

The third and fourth elements of the analysis "merge when the Government is the opposing party." *Nexstar Media, Inc. v. Walters*, 776 F. Supp. 3d 1053, 1060 n.3 (W.D. Okla. 2024) (internal quotation marks omitted) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

According to the Supreme Court,

> Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.

*Jennings v. Rodriguez*, 583 U.S. 281, 285 (2018).

Accordingly, the Government's interest in detaining Petitioner is to ensure Petitioner's presence as the immigration process proceeds. Petitioner argues that, as here, when her life is in danger, the burden on Respondents is "minimal to non-existent." *See* Pet'r's Am. Em. Appl. at 7.

As explained below, the tailored relief ordered by the Court does not impair Respondents' detention of Petitioner, so the equities weigh in Petitioner's favor.

Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Nexstar Media*, 776 F. Supp. 3d at 1060 (alteration and internal quotation marks omitted).

5

CONCLUSION

For the foregoing reasons, Petitioner's Amended Emergency Application for Temporary Restraining Order (Doc. No. 4) is GRANTED as follows:

1. Respondents are directed to immediately provide to Petitioner all medically necessary treatment, including an ultrasound examination of Petitioner's abdomen, either at the Diamondback Correctional Facility or at an otherwise suitable medical facility.  Respondents are further directed to provide to Petitioner any additional treatment that the examining medical provider determines is necessary as a result of that examination, within a reasonable time period based on the advice of the medical provider.

2. If Respondents determine that further medical care is not warranted, Respondents are permitted to seek relief from this Order.  Fed. R. Civ. P. 65(b)(4).

IT IS ORDERED that Respondents shall provide Petitioner a copy of this Order no later than April 2, 2026.

IT IS FURTHER ORDERED that Respondents shall file a brief addressing the facts alleged in Petitioner's Amended Emergency Application for Temporary Restraining Order (Doc. No. 4) and the present circumstances of Petitioner's medical care no later than 3 p.m. on April 2, 2026.

No security bond is required under Federal Rule of Civil Procedure 65(c).  The terms of this Order shall remain in place until April 15, 2026, unless otherwise ordered by the Court.

Petitioner's Emergency Application for Temporary Restraining Order (Doc. No. 3) is DENIED as moot.

In accordance with the agreement between the Clerk of Court and the United States

6

Attorney for the Western District of Oklahoma, the Clerk of Court is directed to send copies of each filing entered in this matter as of the date of this Order via email to the United States Attorney for the Western District of Oklahoma for acceptance on behalf of Respondents.

IT IS SO ORDERED this 1st day of April, 2026.

CHARLES B. GOODWIN
United States District Judge

7